**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.   23-CR-0101-NYW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALEXANDRIA PAIGE EMERSON-BROWN,

    Defendant.

---

**INDICTMENT**

---

The Grand Jury charges:

### COUNT 1

### *BACKGROUND*

Beginning in 2017, at the direction of the Attorney General of the United States, federal law enforcement agencies imposed communication restrictions on an inmate currently housed at the United States Penitentiary, Administrative Maximum Facility, Florence ("the inmate"). The restrictions were imposed to prevent the inmate's further participation in illegal activities while incarcerated. Those restrictions included limiting the inmate's access to communications through the mail, phone calls, and visitors. Specifically, the Bureau of Prisons (at the direction of the Attorney General of the United States) imposed Special Administrative Measures ("SAMs") upon the inmate, pursuant to a federal regulation (28 C.F.R. § 501.3). The stated purpose of the SAMs was to prevent the inmate from "committing, soliciting, or conspiring to commit additional criminal

activity," and to foreclose "communications or contacts with persons [that] could result in death and serious bodily injury to persons."

Under the SAMs, the inmate was prohibited from having contact with anyone outside the prison, except his attorney and legal staff, and certain immediate family members.  Moreover, with the exception of attorney communications, all oral and written communications with immediate family members, including telephone calls, mail and visits, were subject to review and/or contemporaneous observation by Bureau of Prisons personnel and the Federal Bureau of Investigation to ensure that the inmate did not pass any messages to third parties that could be used to further criminal activity.

The inmate was provided with a copy of the SAMs when they were implemented, and was informed of their continuation each year thereafter, including their continuation through the relevant time of this indictment.

The inmate had been housed at the United States Penitentiary, Administrative Maximum Facility, Florence ("ADX Florence") since 2019, and at all times relevant to this indictment.

On or about October 19, 2020, ALEXANDRIA PAIGE EMERSON-BROWN had been retained as a paralegal by the inmate's attorney and assigned to the inmate's legal team.   ALEXANDRIA PAIGE EMERSON-BROWN was provided the SAMs applicable to the inmate on or about November 10, 2020, and signed that she had read, acknowledged, and agreed to follow them.   Thereafter, she was informed and signed acknowledgment each time the SAMs were continued, specifically on February 2, 2021, and again February 7, 2022.

## *THE CONSPIRACY AND ITS OBJECTS*

Beginning at a time unknown to the grand jury but not later than May 14, 2021, and continuing thereafter until on or about December 20, 2022, in the State and District of Colorado, and elsewhere, the defendant, ALEXANDRIA PAIGE EMERSON-BROWN, knowingly and willfully conspired and agreed together with other persons both known and unknown to the grand jury, to defraud the United States and an agency thereof, to wit, to hamper, hinder, impede, and obstruct by trickery, deceit and dishonest means, the lawful and legitimate functions of the United States Department of Justice and its agency, the Bureau of Prisons, in the administration and enforcement of Special Administrative Measures for an inmate subject to SAMs at the United States Penitentiary, Administrative Maximum Facility, Florence.

## *MANNER AND MEANS OF THE CONSPIRACY*

Among the manner and means by which the defendant and unindicted co-conspirators both known and unknown, and acting interdependently, carried out the object of the conspiracy, were the following:

A. ALEXANDRIA PAIGE EMERSON-BROWN would attend scheduled meetings with an inmate at ADX subject to SAMs.

B. Before those meetings, she would receive letters and communications from the inmate's family and would conceal those letters and communications among legal paperwork intended for the inmate.

C. At those meetings, she would surreptitiously provide those letters and communications to the inmate, which were in violation of the SAMs.

D. At those meetings, she would also surreptitiously receive letters and communications from the inmate for the inmate's family and associates, which were in violation of the SAMs.

E. After the meetings, she would provide the letters and communications to the inmate's family and associates, which were in violation of the SAMs.

F. Some of those letters and communications related to committing, soliciting, or conspiring to commit additional criminal activity, and posed risk of death or serious bodily injury to third persons.

G. For the actions described in paragraphs A through G above, ALEXANDRIA PAIGE EMERSON-BROWN would receive payments by wire transfer from the inmate's family and associates, which payments were structured, made, and withdrawn in a manner calculated to avoid detection.  Specifically multiple individuals associated with the inmate's family and associates would send amounts, generally $1000, through multiple transactions sent on single days and withdrawn from different locations.

## OVERT ACTS

In furtherance of the conspiracy's objectives, the following overt acts, among others, were committed in the State and District of Colorado and elsewhere:

A. On or about the dates indicated in the below chart, among other transfers not included, ALEXANDRIA PAIGE EMERSON-BROWN did receive wire transfers from the inmate's family and associates, as payments for delivering messages to

or from the inmate in violation of the SAMs. The total amount received in this manner in the listed transactions was $90,999.50.

| Date sent | Number of transactions | Total amount received | Number of withdrawal locations |
|---|---|---|---|
| May 14, 2021 | 3 | $2999.50 | 2 |
| July 14, 2021 | 2 | $1500 | 1 |
| August 10, 2021 | 3 | $3000 | 3 |
| September 18, 2021 | 3 | $3000 | 1 |
| November 15, 2021 | 3 | $3000 | 1 |
| November 29/30, 2021 | 8 | $8000 | 4 |
| January 17, 2022 | 3 | $3000 | 2 |
| January 27, 2022 | 1 | $500 | 1 |
| February 6, 2022 | 2 | $2000 | 1 |
| February 14, 2022 | 3 | $3000 | 2 |
| March 10, 2022 | 3 | $3000 | 2 |
| March 31-April 1, 2022 | 4 | $3500 | 2 |
| April 27, 2022 | 2 | $2000 | 1 |
| May 17, 2022 | 3 | $3500 | 1 |
| May 23, 2022 | 2 | $2000 | 1 |
| July 19, 2022 | 6 | $6000 | 4 |
| August 2, 2022 | 3 | $3000 | 2 |
| August 8/9, 2022 | 4 | $3500 | 1 |
| August 27, 2022 | 4 | $3500 | 2 |
| September 16, 2022 | 9 | $9000 | 7 |
| October 16, 2022 | 5 | $5000 | 3 |
| October 30, 2022 | 4 | $4000 | 2 |
| November 28/29, 2022 | 4 | $4000 | 2 |
| December 12, 2022 | 5 | $5000 | 3 |
| December 20, 2022 | 4 | $4000 | 3 |

B. Near many of the dates indicated in the above chart, often a day or two after, ALEXANDRIA PAIGE EMERSON-BROWN had scheduled in-person visits with the inmate, during many or all of which scheduled visits she met with the inmate in person, and provided communications from the inmate's family and associates, or

received communications from the inmate to his family and associates, or both, which were in violation of the SAMS.

All in violation of Title 18, United States Code, Section 371.

A TRUE BILL:

<u>Ink signature on file in Clerk's Office</u>
FOREPERSON

COLE FINEGAN
United States Attorney

<u>s/ E. GARRETH WINSTEAD</u>
E. GARRETH WINSTEAD
AL BUCHMAN
Assistant United States Attorneys
United States Attorney's Office
1801 California St., Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0203
E-mail: Garreth.Winstead@usdoj.gov
E-mail: Al.Buchman@usdoj.gov